# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNETICUT

DANIELLE ARCHER,

                *Plaintiff*,

v.

ASPIRE LIVING AND LEARNING, INC.

                *Defendant*.

**Civil Action No.: 23-714**

**COMPLAINT**

Plaintiff Danielle Archer, by and through her undersigned counsel, Eisenberg & Baum, LLP, hereby states her Complaint against Defendant Aspire Living and Learning, Inc. as follows based on personal knowledge and information and belief:

## PARTIES

1. Plaintiff Danielle Archer is a resident of Connecticut who, at all relevant times, was an employee of Aspire Living and Learning, Inc. ("Defendant").

2. Upon information and belief, Aspire Living and Learning, Inc. is a private, non-profit organization with a registered address for service at 2096 Airport Road Barre, VT 05641. Upon information and belief, Defendant owns, leases, and/or operates a learning center at 538 Preston Ave. Meriden, CT 06450, where Plaintiff worked.

## JURISDICTION & VENUE

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under the laws of the United States and supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's state law claims.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides within in this District and because the conduct giving rise to this Complaint occurred in

this District.

5. Plaintiff initially filed a Charge of Discrimination regarding these events with the Equal Employment Opportunity Commission (EEOC Charge No. 523-2022-03951), which issued a right-to-sue letter on March 3, 2023.

**FACTUAL ALLEGATIONS**

6. Plaintiff began her employment with Defendant in 2014.

7. Plaintiff Danielle Archer is a woman who was, at all relevant times, a resident of Connecticut and employed by Defendant as a Behavior Analyst.

8. As a Behavior Analyst, Plaintiff was employed to work in a classroom with students who had behavioral concerns.

9. In February 2022, Ms. Archer requested Defendant to provide her with a reasonable accommodation during her pregnancy.

10. The requested accommodation was for Defendant to limit Ms. Archer from bending, lifting, squatting, pulling, pushing objects, and/or persons over 10 pounds.

11. Said accommodation was requested to last for only 6 weeks, from February 2022 through Ms. Archer's due date in April 2022.

12. Said accommodation was an accommodation that she received in her previous pregnancy without issue from Defendant.

13. Defendant responded to Ms. Archer's request stating that she would have to take medical leave instead of receiving such accommodation.

14. After Ms. Archer complained about Defendant's response to her request for a reasonable accommodation, Defendant placed her in a new position that increased her work

commute, took Ms. Archer away from all contact with children, consisted only of data and computer entry, and operated on a difficult schedule for Plaintiff.

15. From 2017 up until she was reassigned to a data entry role, Plaintiff held supervisory and leadership positions within the company.

16. Defendant also excluded Ms. Archer from trainings and other meetings after she was assigned to this new position.

17. Additionally, if Ms. Archer decided to attend a company conference, Defendant suddenly required Ms. Archer to prepare and present PowerPoint presentations to upper management on what she learned from said conference. Ms. Archer had never been subjected to this requirement during her entire 8 years with the company.

18. At all relevant times during her pregnancy, Ms. Archer was still able to perform her job duties, including caring for and supervising children without lifting, pushing, or pulling them.

19. It is apparent from Defendant's treatment of Plaintiff that Defendant maintains deficient policies that unfairly treat pregnant women.

20. Due to Defendant's conduct, Plaintiff was forced to resign from the company in August 2022.

21. Defendant's conduct caused Ms. Archer a great deal of emotional distress.

**FIRST CAUSE OF ACTION**
**Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e(k)**

22. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above as if set forth more fully and at length herein.

23. Defendant discriminated against Plaintiff based on her sex, and because of her pregnancy, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act.

24. The Pregnancy Discrimination Act added new language to the definitions subsection of Title VII of the Civil Rights Act of 1964. The first clause of the Pregnancy Discrimination Act specifies that Title VII's prohibition against sex discrimination applies to discrimination because of or on the basis of pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000e(k).

25. The Act's second clause says that employer must treat women "affected by pregnancy . . . the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." *Id.*

26. When Plaintiff notified her supervisor that she was pregnant and in need of a 6-week accommodation, Defendant refused to accommodate her pregnancy and/or pregnancy-related conditions while accommodating other, non-pregnant workers who were similar in their ability or inability to work.

27. Defendant's refusal to accommodate Plaintiff imposed a significant burden on her, and Defendant offered no sufficient reason to justify that burden.

28. These policies also cause a disparate impact on pregnant women because the effect of requiring pregnant workers to go on leave instead of allowing a short-term accommodation will fall more harshly on pregnant women than other employees and impose a significant burden on pregnant workers.

29. As a result of Defendant's unlawful sex discrimination, Plaintiff suffered emotional pain, suffering, and other nonpecuniary losses.

## SECOND CAUSE OF ACTION
**Retaliation**

30. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above as if set forth more fully and at length herein.

31. Defendant retaliated against Plaintiff, in violation of Title VII of the Civil Rights Act of 1964, because she engaged in protected activity when she requested an accommodation and instead of accommodating Plaintiff, Defendant moved Plaintiff to a less desirable job, demoted her from a leadership status, excluded her from team trainings and meetings, and created burdensome requirements for Plaintiff to attend conferences. Additionally, Defendant insisted Plaintiff take leave in lieu of issuing an accommodation. Defendant's actions led to Plaintiff's constructive discharge.

32. Defendant's adverse actions would likely dissuade a reasonable employee from making or supporting a charge of discrimination.

33. Defendant's actions are in retaliation for her desiring to continue to work with reasonable accommodations instead of taking leave.

34. As a direct, legal, and proximate cause of Defendant's acts and omissions, Plaintiff suffered adverse employment consequences and sustained economic and noneconomic harms, including, but not limited to loss of professional opportunities and other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

## THIRD CAUSE OF ACTION
**Constructive Discharge**

35. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above as if set forth more fully and at length herein.

36. Defendant constructively discharged Plaintiff, in violation of Title VII of the Civil Rights Act of 1964.

37. When Defendant moved Plaintiff to a less desirable job, demoted her from a leadership status, excluded her from team training and meetings, and created burdensome requirements for Plaintiff to attend conferences, Defendant created an intolerable work environment for Plaintiff.

38. Accordingly, Plaintiff was forced to resign after working for Defendant for 8 years.

39. As a direct, legal, and proximate cause of Defendant's acts and omissions, Plaintiff suffered adverse employment consequences and sustained economic and noneconomic harms, including, but not limited to loss of professional opportunities and other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

## FOURTH CAUSE OF ACTION
## Connecticut Fair Employment Practices Act ("CFEPA")

40. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above as if set forth more fully and at length herein.

41. Connecticut state law also prohibits discrimination based on pregnancy and its related conditions. Specifically, the CFEPA requires that an employer make a "reasonable accommodation for an employee . . . due to her pregnancy." §46a–60(7)(G).

42. Defendant failed to make reasonable accommodations for Plaintiff's pregnancy in violation of the CEFPA.

43. Defendant denied Plaintiff's reasonable accommodations even though it would not have imposed undue hardship on Defendant to grant such accommodations to Plaintiff.

44. As a direct, legal, and proximate cause of Defendant's acts and omissions, Plaintiff suffered adverse employment consequences and sustained economic and noneconomic harms, including, but not limited to loss of professional opportunities and other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

## PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the following relief:

A. Declaratory relief, including but not limited to a declaration that Defendant violated Title VII and the CFEPA;

B. Injunctive relief, including but not limited to revision of Defendant's policies with respect to accommodating pregnancy, childbirth, and related conditions, so that they comply with Title VII and the CFEPA;

C. Compensation for loss of any income and benefits;

D. Compensatory damages, including for emotional distress;

E. Pre-judgment and post-judgment interest at the highest lawful rate;

F. Costs incurred, including reasonable attorneys' fees to the extent allowable by law;

G. Nominal damages;

H. Punitive damages to the extent allowed by law; and

I. All other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on the matters alleged herein.

Dated: New York, NY
June 1, 2023

Respectfully submitted,

/s/ Andrew Rozynski
Andrew Rozynski, Esq.
EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, NY 10003
Tel: (212) 353-8700
Fax: (917) 591-2875
arozynski@eandblaw.com
*Attorneys for Plaintiff*

8